# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 13-23998-CIV-ALTONAGA/GOODMAN

DONALD KIPNIS, et al.,

    Plaintiffs,

v.

BAYERISCHE HYPO-UND VEREINSBANK, AG, et al.,

    Defendants.

_____/

## ORDER CONCERNING PRIVILEGE CLAIM RE: ATTORNEY ROBERT STAMEN

In response to Orders [ECF Nos. 120; 124] requiring additional briefing about a discovery dispute not resolved at a discovery hearing, the parties have submitted memoranda [ECF Nos. 122-123; 127-128] addressing Defendants' theory that they are entitled to communications involving attorney Robert Stamen. Defendants assert two arguments, either of which (if accepted as applicable) would be sufficient to require production of documents (and testimony) in spite of Plaintiffs' attorney-client privilege assertion: (1) waiver (generated by disclosure of communications with another attorney), and (2) the "at issue" doctrine.

For the reasons outlined below, the Undersigned concludes that (a) Plaintiffs have not waived the attorney-client privilege, and (b) the "at issue" theory is insufficient to generate a waiver. Therefore, the attorney-client privilege protecting

1

communications with attorney Stamen remain intact and, in the absence of further developments, Defendants are not permitted to obtain documents to and from Mr. Stamen that are subject to the attorney-client privilege, nor will they be permitted to ask deposition questions that would disclose privileged communications with Mr. Stamen.

**Factual and Procedural Background**

Donald Kipnis and Kenneth Welt are the two Plaintiffs listed in the Amended Complaint. [ECF No. 72]. Mr. Welt is the Chapter 7 bankruptcy trustee for the bankruptcy estate of Lawrence Kibler. Mr. Kipnis and Mr. Kibler are (or were) the owners of Miller & Solomon General Contractors, Inc., one of the largest general contractors in South Florida.

The lawsuit involved Custom Adjustable Rate Debt Structures ("CARDS"), which Plaintiffs allege to be "one of a number of very sophisticated income tax shelter schemes" that Defendants and other unnamed co-conspirators "promoted and sold on a national and international level for their own financial gain and to defraud Messrs. Kipnis and Kibler" and others. [ECF No. 72, p. 1]. Defendants are a German Bank and its affiliate; they offer banking and credit services for financial transactions.

Plaintiffs allege that Defendants did not disclose the illegitimate nature of the CARDS transactions, causing the United States Tax Court's judgment requiring Messrs. Kipnis and Kibler to pay millions of dollars in tax liability and interest after the Court concluded that the transaction lacked economic substance and disallowed losses

2

stemming from the transaction. Plaintiffs contend that the transactions disallowed by the Tax Court could not have occurred without the Defendants' participation. They allege that they paid substantial fees to Defendants and others in connection with the CARDS transactions.

In a Tax Court trial concerning the CARDS transactions, Mr. Kibler testified that Mr. Stamen, attorney Ron Braley, and Mike DeSiato (an accountant) had been "engaged to look at this transaction for us." [ECF No. 119-1, p. 5]. He also testified that he "understood from our CPA, who was retained to explain this to us, and the attorneys involved, how this worked." [ECF No. 119-1, p. 6]. He explained that he "just reviewed" the loan documentation and "relied on my partner to do the extensive investigation, along with the two attorneys that we hired, Mr. Braley and Mr. Robert Stamen." [ECF No. 119-1, p. 7].

The Amended Complaint does not expressly allege reliance on advice from attorneys and accountants.

At a recent discovery hearing, Plaintiffs' counsel unequivocally stated that Plaintiffs will not rely on the advice of Mr. Stamen, an attorney, in this action. Although the advice of counsel theory is typically used as a *defense*, it arose here because Defendants argue that Plaintiffs may use it as a basis to pursue their claims. Specifically, Defendants are concerned that Plaintiffs will contend that they entered into certain purported tax shelters on the advice of their attorneys and accountants. They are also

concerned that Plaintiffs' concession does not provide them with adequate protection because Mr. Kibler already testified, in the Tax Court trial, that he *did* rely on Mr. Stamen's advice.

Defense counsel stated that he plans to take Mr. Kibler's deposition and anticipates that Mr. Kibler, who is not technically a party himself to this case,[1] will repeat his testimony that he relied on Mr. Stamen's legal advice. And defense counsel further argued that Mr. Kibler may well repeat this testimony at trial, which means that the issue of reliance will arise notwithstanding the concession by Plaintiffs' counsel.

In a post-hearing memorandum [ECF No. 122, p. 3], Plaintiffs explain that their counsel raised the so-called reliance issue with Mr. Kibler and "can represent to the Court on his behalf that, like Plaintiffs, Mr. Kibler will not, in his personal capacity, rely on the advice of attorney Stamen in any testimony in this lawsuit." And, according to Plaintiffs, "that should settle the issue." [ECF No. 122, p. 3].

Plaintiffs initially withheld from production as privileged memoranda containing Mr. Braley's advice. Mr. Braley, subpoenaed by Defendants, also withheld and logged as privileged his legal advice. In a meet-and-confer, Defendants argued that the memoranda is not privileged because Mr. Braley had copied Roy Hahn, a member of the conspiracy, on them. According to Plaintiffs, Messrs. Kipnis, Kibler, and Braley

---

[1] Mr. Kibler is not a named plaintiff. Instead, Ken Welt, as the Chapter 7 trustee of Mr. Kibler's bankruptcy, is the named plaintiff.

4

were unaware that Hahn was a member of the conspiracy at the time, but nevertheless, his receipt of the advice broke the privilege. Therefore, Plaintiffs and Mr. Braley produced the documents.

Plaintiffs contend that they did not waive the attorney-client privilege for communications with Mr. Stamen. They explain that their disclosure of certain privileged documents concerning Braley was because they "acceded to Defendants' argument, rather than force motion practice[.]" [ECF No. 128, p. 2]. They also advise that none of the substance of the communications between Messrs. Kipnis, Kibler, and Braley were ever privileged in the first place "because it was shared with non-privileged participants," which they say means that "no privilege was waived." [ECF No. 128, p. 2]. Therefore, Plaintiffs further contend, the production of the Braley documents "cannot effect a waiver as to communications with another attorney at another law firm (Stamen) who did not disclose his advice to members of the conspiracy." [ECF No. 128, p. 2].

In addition, Plaintiffs also argue that they "never made an intentional election to waive their privilege with Braley" because that waiver "was forced upon them by Braley's decision to copy a member of the conspiracy on his advice to Claimants."[2] [ECF No. 128, p. 5].

---

[2] Plaintiffs use "Claimants" to refer to Messrs. Kipnis and Kibler and use "Plaintiffs" to refer to Messrs. Kipnis and Welt (the trustee for Kibler's bankruptcy).

Moreover, Plaintiffs also say that they can maintain their privilege regarding Mr. Stamen "despite the production of Braley's memos." [ECF No. 128, p. 5]. They say it "would not be fair" to "allow Defendants to use Braley's disclosure of advice to one of their co-conspirators to effect a broad waiver as to all advice Claimants received in connection with CARDS where Plaintiffs have not disclosed -- and have represented to [the Court] that they will not disclose -- their communications with Stamen." [ECF No. 128, p. 5].

Although the Amended Complaint does not allege that Plaintiffs or Claimants relied on Mr. Stamen's legal advice, Defendants emphasize that it *does* affirmatively allege that Claimants did not know that CARDS was an unlawful tax shelter. [ECF No. 127, p. 2].

Defendants contend that the disclosure of the Braley communications waived the attorney-client privilege and that the scope of the waiver is *all* the legal advice Claimants received regarding CARDS, not merely legal advice received only from Mr. Braley. Therefore, they argue that they are also entitled to obtain discovery about Mr. Stamen's legal advice about CARDS. Defendants say that both attorneys "analyzed all aspects of Plaintiffs' CARDS transaction," which (according to their perspective) means that the subject matter of the Braley communications is not significantly different than the subject matter of the Stamen communications. [ECF No. 127, p. 4]. And that, Defendants contend, means that the subject matter waiver of the privilege encompasses

6

all CARDS communications with attorneys, including the communications with Mr. Stamen.

**Applicable Legal Principles and Analysis**[3]

Florida law generally disfavors finding a waiver of the attorney-client privilege. *Coates v. Akerman, Senterfitt & Eidson, P.A.*, 940 So. 2d 504, 508 (Fla. 2d DCA 2006). Although Mr. Braley's decision to copy others on his written communications is inconsistent with the attorney-client privilege, it was Mr. Braley who did this, not the clients. No act by Plaintiffs, nor Mr. Kibler, to-date has waived the attorney client privilege for all communications with all attorneys about CARDS -- including the limited excerpts of testimony Defendants cite in which Mr. Kibler made reference, in general, to having consulted Mr. Stamen.

Therefore, there is a strong argument that **Plaintiffs** (themselves) did not waive the privilege. Nevertheless, even if Plaintiffs waived the privilege for communications with Mr. Braley, the Undersigned is not convinced that a voluntary waiver of the attorney-client privilege concerning one law firm automatically and necessarily leads to a waiver of the privilege concerning communications with another law firm about the same transaction.

---

[3]  Because Plaintiffs' claims arise under Florida common law, Florida law controls issues related to the attorney-client privilege. Fed. R. Evid. 501; *1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008).

Plaintiffs rely on *Coates*, where the plaintiff sued one law firm based on the advice its attorneys provided "in connection with a 'proprietary tax savings plan' and the establishment of a joint venture." 940 So. 2d at 506. Suing the law firm necessarily (and voluntarily) waived the privilege as to communications with that law firm. The defendant law firm then argued that the subject matter should be construed broadly to encompass "any advice the clients received with respect to the plan and joint venture," including the advice the clients received from another law firm. *Id.* at 509 (emphasis omitted). The court disagreed: "The fact that the clients obtained advice from others while also being advised by the lawyers does not result in a waiver of the attorney-client privilege that exists as to communications between the clients and their other advisors." *Id.*

*Coates* denied discovery of the communications with the other law firm that had advised the plaintiff on the same transaction. *Id.* at 511. Under *Coates*, therefore, waiver as to one law firm or attorney (Mr. Braley) does not destroy the attorney-client privilege asserted as to advice from another law firm or attorney (Mr. Stamen). *See also Volpe v. Conroy, Simberg & Ganon, P.A.*, 720 So. 2d 537, 539 (Fla. 4th DCA 1998) (quashing discovery order compelling discovery from clients' personally-retained attorneys and explaining that "the mere fact that two attorneys may be representing a single client on the same matter does not waive the privilege that *the client* has to prevent his or her confidential communications to one of his or her lawyers from being revealed to the

8

other lawyer.") (emphasis in original); *see also Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A.*, 715 So. 2d 1021, 1023 (Fla. 4th DCA 1998) (granting petition for writ of certiorari, quashing trial court order overruling objections to discovery request for correspondence with successor lawyers and noting that "the mere relevance of those documents does not override the privilege[.]").

Florida recognizes a narrow or "limited waiver" of the attorney-client privilege. *Paradise Divers, Inc. v. Upmal*, 943 So. 2d 812, 814 (Fla. 3d DCA 2006) (finding that employer's partial waiver of privilege by agreeing to produce documents relevant to an advice of counsel defense did not require production of all documents subject to privilege); *see also McPartland v. GEICO Gen. Ins. Co.*, No. 6:09-cv-268, 2010 WL 11507535, at *6 (M.D. Fla. Mar. 5, 2010) ("Under Florida law, the attorney-client privilege may be waived as to a limited subject matter.") (internal citations omitted). Therefore, the Undersigned must determine if, assuming there was a waiver of the Braley communications, the subject matter of the waiver is **all** legal advice concerning the CARDS transaction.

There is no bright line test to determine the subject matter of a waiver. Instead, courts weigh the circumstances of the disclosure, the nature of the advice, and whether permitting or prohibiting further disclosures would prejudice the parties. *QBE Ins. Corp. v. Jordan Enters., Inc.*, 286 F.R.D. 661, 664 (S.D. Fla. 2012).

In their memorandum, Defendants argue that "**Plaintiffs**' selective disclosure of the legal advice of one attorney but not the other does not comport with the purpose of the subject matter waiver doctrine." [ECF No. 127, p. 3 (emphasis supplied)]. But that argument is somewhat skewed, as it was Mr. *Braley* himself, not Plaintiffs, who disclosed the privileged communications to third parties. At bottom, Plaintiffs had little choice but to finally concede that Mr. Braley's conduct required the production of certain privileged documents.

To be sure, the scope of the waiver is determined on a case-by-case basis, "but, fairness dictates that a litigant cannot pick and choose those portions of the attorney-client communications that will be disclosed, thereby disguising, garbling, or manipulating the truth." *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 598 (S.D. Fla. 2014) (internal quotation omitted). Courts consider the following factors to determine the scope of the waiver:

> (1) the general nature of counsel's assignment; (2) the extent to which counsel's activities in fulfilling the assignment are undifferentiated and unitary or are distinct and severable; (3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; (4) the circumstances in and purposes for which disclosure was made originally; (5) the circumstances in and purposes for which further disclosure is sought; (6) the risks to the interests protected by the privilege if further disclosure were to occur; and (7) the prejudice which might result without disclosure.

*Guarantee Ins. Co.*, 300 F.R.D. at 598 (internal citation omitted).

Under the unique circumstances of this case, the Undersigned views the last four factors (4-7) to be particularly significant. As noted, it was Mr. Braley, not the Plaintiffs or Claimants themselves, who created the potential-waiver scenario. No evidence has been presented to establish that Mr. Braley was aware that Mr. Hahn was a member of the conspiracy. And there is no evidence to suggest that Mr. Braley was attempting to selectively waive the privilege for strategic reasons.

Likewise, the Undersigned does not deem Plaintiffs' concession to be a strategic tactic designed to enable them to use the attorney-client privilege as a sword and shield. Instead, the Undersigned considers their concession to be a realistic, candid assessment of the unfortunate legal situation that Mr. Braley's actions caused them.

Finally, the Undersigned concludes that any potential prejudice to Defendants is ameliorated by the fact that Plaintiffs have repeatedly and unequivocally represented that they are not relying on Mr. Stamen's legal advice to prosecute their claim. Similarly, Plaintiffs' counsel has represented that Mr. Kibler has given a similar reassurance about his own testimony in this case.

The Undersigned will now address the "at issue" doctrine -- i.e., Defendants' argument that Mr. Stamen's legal advice is at issue based on Mr. Kibler's brief trial testimony in the Tax Court.

"[F]or waiver to occur under the at issue doctrine, the proponent of a privilege must make a claim or raise a defense based upon the privileged matter and the

11

proponent must *necessarily use* the privileged information in order to establish its claim or defense." *Coates*, 940 So. 2d at 510 (emphasis added).

Nothing in the Amended Complaint requires the introduction of the substance of attorney Stamen's legal advice. Moreover, Plaintiffs have confirmed that they will not seek to introduce his legal advice in support of their claims.

Analyzing Mr. Kibler's Tax Court testimony leads to the conclusion that the excerpts provided show only answers referring to *general* reliance on Mr. Stamen's legal advice. The answers are non-specific and do not pinpoint particular legal advice. At most, Mr. Kibler mentioned, in a conclusory way, that he relied on his partner and the two attorneys they hired to review the loan documentation. His trial testimony does not mention any particular communication. It does not disclose the actual advice. It consists of two or three sentences of comparatively vague references to reliance on his lawyer.

Given this comparatively cryptic, succinct, and non-specific trial testimony, the Undersigned finds that Mr. Kibler's Tax Court testimony does not support the at issue waiver doctrine. It may well be that Defendants' defense here would be helped by disclosure of the confidential and privileged communications with Mr. Stamen. But that is not the litmus test and that does not create a waiver of the attorney-client privilege. *Coates*, 940 So. 2d at 509; s*ee also Shafnaker v. Clayton*, 680 So. 2d 1109, 1111 (Fla. 1st DCA 1996) (finding that respondents could not discover communications petitioners had

with other attorneys even though the information may have helped respondents defend the case).

**<u>Conclusion</u>**

Defendants have the burden under Florida law to prove facts that would make an exception to the attorney-client privilege applicable. *McParland*, 2010 WL 11507535, at *6. Defendants have not done that.

To the contrary, the Undersigned concludes that Plaintiffs have not waived the attorney-client privilege concerning confidential communications with Mr. Stamen. However, based on their representations, both in Court and in memoranda, Plaintiffs may not take the position that Mr. Kibler relied on legal advice from Mr. Stamen and Mr. Kibler may not take the position that he relied on that advice when deciding whether to enter into the CARDS transaction.

The Undersigned's decision here is based, at least in significant part, on Plaintiffs' on-the-record concessions about Claimants not relying on legal advice to support their claims here. So Plaintiffs cannot use legal advice from Mr. Stamen to bolster their allegation that Claimants did not know that the CARDS transaction was an unlawful tax shelter. And they cannot advance the argument that they relied on Mr. Stamen's advice. If they were to adopt that position, then Defendants may well be entitled to obtain privileged communications with Mr. Stamen and to ask Mr. Stamen deposition questions about his advice.

So Plaintiffs have now made their legal bed and must lie in it.

Concerning possible objections to this Order, magistrate judges enjoy extremely broad discretion in controlling discovery.

Pursuant to Federal Rule of Civil Procedure 72(a), which governs objections to a magistrate judge's discovery rulings, the standard of review is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). This is an extremely deferential standard of review, and this "high bar" is "rarely invoked." *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). "'To be clearly erroneous, a decision must strike [the reviewing court] as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week old, unrefrigerated dead fish.'" *Id.* at n. 92 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)); *see also Hiram Walker & Sons, Inc. v. Kirk Line,* 30 F.3d 1370, 1378 n. 2 (11th Cir. 1994) (concurring in the opinion, Judge Dubina invoked the "dead fish" analogy and described that definition as "the best I have seen").

**DONE and ORDERED** in Chambers, in Miami, Florida, on September 1, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Cecilia M. Altonaga
All Counsel of Record